DAVID SHOLTZ, *et al.*, v. STATE, *ex rel.*, L. P. CHALMERS.

166 So. 319.
Division B.
Opinion Filed February 28, 1936.

*Cary D. Landis,* Attorney General, and *Robert J. Pleus,* and *James B. Watson,* Assistant, for Plaintiffs in Error.

*C. Robert Burns* and *Terry Gibson,* for Defendant in Error.

BUFORD, J.—The writ of error brings for review a judgment awarding peremptory writ of mandamus requiring the

State Board of Administration to pay certain interest coupons on bonds issued by Monroe County, some of which bonds were road bonds, others bridge bonds, and others highway bonds, a part maturing August 1, 1933, and a part maturing June 1, 1933, totaling $2120.00.

A material allegation in the alternative writ of mandamus was contained in paragraph 10 thereof as follows:

"That there was included in the Monroe County Budget adopted September 6, 1933, as same appears in Commissioners Minutes Book, pages 105-6-7, Records Monroe County, Florida, the following items for Bond and Interest Fund:

"BOND AND INTEREST FUND
(W. V. Knott, Treasurer Ex-Officio)

| | |
|---|---|
| $213735.00 | Interest and Sinking Fund |
| 85000.00 | Past Due, Interest not paid. |
| 298735.00 | |
| 150000.00 | Less Gas Tax Estimated. |
| 148735.00 | |
| 146200.00 | 34 Mills on $4,300,000.00 |
| 2535.00 | Short |

and that said Budget was certified to the said Board of Adminisrtation on the 17th day of July, A. D. 1934, and attached to said copy of said budget was the following certificate, to-wit:

" 'STATE OF FLORIDA
" 'COUNTY OF MONROE

" 'COUNTY BUDGET Adopted September 6th, 1933, and MONROE COUNTY MILLAGE as same appears in Commis-

sioners Minute Book "E," pages 105, 6, 7 records of Monroe County, Florida.

" 'Witness my hand and official seal this 17th day of July A. D. 1934.

" 'Ross C. Sawyer (signed) (seal)

" 'Ross C. Sawyer
" 'Clerk Circuit Court
" 'Monroe County, Florida.'

"That the total interest and principal maturing June 1st and August 1st during the year 1933 by virtue of the outstanding Bond indebtedness of Monroe County, Florida, amounted to $96,272.00, but that the amount which has been paid as of the time of the filing of this petition is unknown to your Relator, and the aforesaid maturities consitute the first and oldest unpaid commitments of the said county. That on the 7th day of November, 1934, there was in the hands of and subject to the control of the said Board of Administration, and in the custody of the said States Treasurer, as County Treasurer *Ex-Officio* of Monroe County, Florida, to the Clerk of Monroe County, Florida, the sum of $176,254.49, representing the proceeds collected from the gasoline tax and apportioned to Monroe County under the terms and provisions of the statutes relating thereto. That the said funds were appropriated by the Board of County Commissioners, to the payment of the past due and maturing principal and interest of Monroe County, prior to the fiscal year beginning October 31st, 1933, and ending September 30th, 1934, arising by virtue of its outstanding bonded indebtedness, and that the aforesaid Board of Administration was duly advised of such appropriation by the said Board of Commissioners of the said Monroe County, Florida, all as set forth in the aforesaid

Budget and Certificate. That the said Board of Administration, and W. V. Knott, State Treasurer, as Treasurer Ex-Officio in Monroe County, Florida, have on hand and in their possession, custody and control, more than a sufficient sum properly applicable to the payment of the claim of the Relator for the Interest Coupons herein.

"That Relator, together with all other holders of interest coupons of the said county during the year 1933, is entitled to the payment of same out of the funds so apportioned to this purpose by the Respondents, David Sholtz, J. M. Lee and W. V. Knott, as and constituting the Board of Administration of the State of Florida; J. M. Lee, Comptroller of the State of 'Florida and Secretray of the Board of Administration of the State of Florida, W. V. Knott, State Treasurer of the State of Florida, as County Treasurer Ex-Officio of Monroe County, Florida, pursuant to appropriation described above by the said Board of County Commissioners of Monroe County, Florida, but that the said Respondents have failed and refused to pay the claim of the Relator arising by virtue of the aforesaid Interest Coupons, and notwithstanding the fact that there is in said custody and control of said Board of Administration and Respondent, W. V. Knott, Treasurer of the State of Florida, as Treasurer Ex-Officio of Monroe County, Florida, more than a sufficient sum of money legally and duly budgeted, allocated and appropriated for this purpose, and properly allocated to the payment of Relator's Coupons for the year 1933, and due all other holders and owners of Coupons maturing during said year."

The Return of the Respondents is, in part, as follows:

"9. That they admit the allegations in numbered paragraph 10, contained, except that these respondents deny that the total interest and principal maturing June 1 and

August 1, 1933, by virtue of the outstanding bonded indebtedness of Monroe County, Florida, amounted to $96,272; but admit that the June 1 and August 1, 1933, maturities constitute the first and oldest unpaid commitments of said county; and these respondents deny that there is in their possession, custody or control more than a sufficient sum properly applicable to the payment of the relator's alleged claim, and further deny that relator, or any other alleged holder of interest coupons of the said county, is entitled to payment of same out of the funds in their hands or in the hands of W. V. Knott, State Treasurer, as County Treasurer ex-officio.

"10. And further answering said alternative writ of mandamus, these respondents allege that as of the date of the service of the alternative writ herein, to-wit: November 16, 1934, the defaults in the aforesaid seven issues were as follows:

| | | | | | |
|---|---|---|---|---|---|
| 6/1/25 | $ 650,000 | Bridge | 6/1/33 | | $15,867.50 |
| 6/1/25 | 2,000,000 | Highway | 6/1/33 | | 46,722.50 |
| 6/1/27 | 650,000 | Road | 6/1/33 | | 18,540.00 |
| 1/1/28 | 100,000 | Road | 7/1/33 | | 2,500.00 |
| 2/1/24 | 151,000 | Bridge | 8/1/33 | | 1,050.00 |
| 2/1/24 | 142,000 | Road | 8/1/33 | | 1,500.00 |
| 5/1/28 | 200,000 | Ferry | 11/1/33 | | 5,460.00 |
| 6/1/25 | Bridge | | 12/1/33 | | 15,867.50 |
| 6/1/25 | Highway | | 12/1/33 | | 46,722.50 |
| 6/1/27 | Road | | 12/1/33 | | 18,540.00 |
| 1/1/18 | Road | | 1/1/34 | | 2,500.00 |
| 2/1/24 | Bridge | | 2/1/34 | $5,000.00 | 1,050.00 |
| 2/1/24 | Road | | 2/1/34 | 5,000.00 | 1,500.00 |
| 5/1/28 | Ferry | | 5/1/34 | 6,000.00 | 5,460.00 |
| 6/1/25 | Bridge | | 6/1/34 | | 15,867.50 |

| | | | |
|---|---|---|---|
| 6/1/25 | Highway | 6/1/34 | 46,722.50 |
| 6/1/27 | Road | 6/1/34 | 18,540.00 |
| 1/1/18 | Road | 7/1/34 | 2,500.00 |
| 2/1/24 | Road | 8/1/34 | 1,350.00 |
| 2/1/24 | Bridge | 8/1/34 | 900.00 |
| 5/1/28 | 200,000 Refund'ng | 11/1/34 | 5,280.00 |

$16,000.00 $294.440.00

"11. And further answering said alternative writ of mandamus, these respondents allege that relator stood by for the last past several years, and allowed a hopelessly insufficient levy of ad valorem taxes to be made to meet the debt service requirements either as to principal or interest on the bond issues involved, taking into consideration also the gasoline tax moneys, and therefore is now estopped to assert the first-come first-served doctrine or any right based thereon against the funds in the hands of these respondents, and is guilty of laches precluding it from any relief based thereon.

"12. And further answering said alternative writ of mandamus, these respondents say that on June 18, 1934, the Board of County Commissioners of Monroe County passed a certain resolution adopting and invoking the provisions of Chapter 15891, Laws of Florida, Acts of 1933, commonly known as the Kanner Bill, and said county operated under said law for several months with some $251,000 in bonds being purchased.

"On September 6, 1933, the said county commissioners passed a resolution rescinding their former action and authorizing these respondents as the Board of Administration to apply gasoline tax receipts to the payment of bond interest and principal, but before a sufficient amount of funds

had been accumulated to pay in full the oldest outstanding maturity of bonds and/or coupons, the said county by resolutions passed April 16, and May 2, 1934, rejected all prior resolutions and again invoked the provisions of the said Kanner Bill, and pursuant to such last mentioned resolutions, some additional bonds were bought. About this time the Supreme Court on, to-wit: May 4, 1934, decided the case of State, *ex rel.* Florida National Bank of St. Petersburg v. Sholtz, and pursuant to written opinion of the Attorney General under date of July 6, 1934, an investigation was made to determine whether or not anticipated gasoline tax receipts had been lawfully appropriated by said Monroe County for debt-service purposes during the fiscal year 1933-34; such examination disclosed the fact that such moneys had been so appropriated and the county was, therefore, pursuant to the decision of the above cause and the final decision therein on July 10, 1934, precluded from further operation under the Kanner Bill during the remainder of the said fiscal year.

"These respondents allege that they took formal cognizance of the rule announced by the Supreme Court in the above cause, insofar as it had the effect of prohibiting further purchases by said county of bonds with gasoline tax moneys, but determined that they would not disburse said gasoline tax moneys in any case, in payment of bonds or interest, where the county involved had endeavored to operate under the said Kanner Bill, except upon further action by the Legislature or upon order of a court of competent jurisdiction, pursuant to appropriate proceedings instituted by the holder of some specific coupons or bonds, and this policy was therefore followed as to the residue of gasoline tax moneys received to the credit of the said Monroe County during the balance of the 1933-34 fiscal year."

In short, it is the contention of the Respondents that although under date of September 6, 1933, the County Commissioners of Monroe County appropriated the gas tax payable to Monroe County for the fiscal year 1933-34 estimated at $150,000.00 to the payment of interest and sinking funds and past due interest not paid, to the bond and interest fund of that county so as to reduce the ad valorem millage to be collected for debt-service in the county for that fiscal period and that although the gasoline tax was so appropriated, budgeted and collected, it now appears that the State Board of Administration did not pay the past due interest coupons here involved during that fiscal period; at the end of that fiscal period the money so allocated and budgeted to be used in the payment of bonds and matured interest coupons reverted to the gasoline tax fund and is no longer available to pay those past due bonds and interest coupons.

The principle involved is the same as that which was involved in the case of State, *ex rel* Florida National Bank of St. Petersburg, v. State Board of Administration, 115 Fla. 753, 154 Sou. 876, and 156 Sou. 15. The only material difference between the two cases is that in the Florida National Bank of St. Petersburg case the effort was made to cancel the allocation of the gasoline tax money during the fiscal year for which it was allocated, while here the contention is that at the expiration of the fiscal year the allocated money reverted to the gasoline tax fund, although the obligations which it was allocated to pay had not been paid and were still outstanding past due obligations.

The question for our determination here is, as stated by the defendant in error.

"Where respondents admit that they have on hand sufficient gasoline revenues, duly budgeted by the county af-

fected, for debt service purposes, to pay all of relator's coupons and all similar coupons of same maturity held by other persons, and it appears that said coupons are the first and oldest unpaid commitment of the county affected, is it error to order relator's said coupons paid by respondents from said fund?"

Our answer is that such order is not error, which answer is on authority of State, *ex rel.* Florida National Bank of St. Petersburg, v. State Board of Administration, *supra.*

In that case we held:

"In the present case it appears that the County Commissioners of Pinellas County had, for the fiscal year which is involved in the proceeding, already definitely and finally appropriated the anticipated revenues for that fiscal year to the purpose of paying the interest and sinking fund due to be currently paid upon the bonds of the series of which relator's bonds constitute a part.

"It was consequently beyond the power and province of the County Commissioners of Pinellas County, after having once made such appropriation for the purpose of reducing ordinary tax levies for bond requirements in the district, to thereafter invoke the provisions of the Kanner Bill for that same fiscal year, and by that means withdraw appropriated revenues from the interest and sinking fund account of Special Road and Bridge District No. 13 after such revenues had once become available to make the payments of the amounts due to be paid on July 1, 1933."

When the gasoline tax money of Monroe County was allocated and budgeted by the County Commissioners of Monroe County to be used for the payment of matured bonds and interest coupons and those that should mature during the fiscal year 1933-34, it converted that fund to the status of a fund raised by ad valorem taxes to pay those

specific obligations and neither the Board of County Commissioners of Monroe County nor its agent, the State Board of Administration, can hold that money, failing and refusing to pay the obligations for which it was budgeted until the end of the fiscal year in which it was allocated and appropriated and then say to the holders of matured bonds and interest coupons, "You did not find a way to get this money until the end of this fiscal year and now we will put it forever beyond your reach by allowing it to revert to the gasoline tax fund and using it for some other purpose." When that fund was collected, having been so allocated and budgeted, the holders of those matured bonds and interest coupons, for the payment of which it was allocated, acquired a vested interest in that fund, which interest could not be discharged except by the payment of the obligations or the exhausting of the fund in the payment of those, and other like obligations to the payment of which it had been allocated and budgeted.

The provisions of Section 1528 R. G. S., 2306 C. G. L., as amended by Chapter 16,286, Acts of 1933, authorizing unexpended balances to the credit of any account at the end of the fiscal year to revert to the fund from which the appropriation was made does not become effective until the obligations for which the fund was appropriated shall have been discharged. An unexpended balance contemplates the balance which remains after the payment of the obligations lawfully payable from the fund as appropriated.

In the case of State, *ex rel.* Woodward, v. Lee, 116 Fla. 742, 156 Sou. 691, the answer of the Comptroller set up in effect that the appropriation referred to in paragraph 4 of the alternative writ of mandamus was one of the items appropriated for the operation of the Comptroller's office; that the appropriation was for a period of time which ended

June 30, 1933, and that under the laws of Florida appropriations for specific items not so used revert to the general revenue fund and that, therefore, in August, 1933, it was not true that the funds necessary for the payment of the salary of relator were available for the payment of said salary; that if said funds had not been paid out at the close of the fiscal year on June 30, 1933, it then and thereafter became impossible and illegal for respondent to draw warrant on the general fund for the payment of said salary and, therefore, he could not be required to pay the same. This Court entered an order striking that part of the answer and, while the Court in that case did not state its reason for the order, it was necessarily upon the theory that in law no unexpended balance in the appropriation could exist subject to revert until the lawful claims against the appropriation had been paid.

The judgment should be affirmed and it is so ordered.

Affirmed.

ELLIS, P. J., and TERRELL, J., concur.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.