J. E. PIERCE, ROSS PARRISH, D. J. FUQUAY and R. S. TOLAN, as members of the Board of Bond Trustees of Ocean Shore Improvement District in Flagler and Volusia Counties, *et al.* v. J. FRANK ISAAC.

184 So. 669.
Opinion Filed November 22, 1938.

*Alfred A. Green,* for Appellants;

*D. C. Hull* and *Hull, Landis & Whitehair,* for Appellee.

PER CURIAM.—From an order restraining the Board of Bond Trustees from delivering to any bidder or purchaser refunding bonds dated 1937, except such an amount thereof as of December 1, 1938, as can not be paid off or retired by the use of funds now on hand and accruing up to December

1, 1938, and from directing or requesting the State Board of Administration to pay any refunding fees to the fiscal agents of the district, an appeal has been perfected to this Court to rescind the aforesaid temporary restraining order entered by the Circuit Court of Volusia County, Florida.

It has been made to appear that the resolution dated December 1, 1932, authorizing the issuance of the Highway Refunding Bonds, provides in Section 6:

"That whenever and as often as there is a surplus in the Sinking Fund created for the payment of said Highway Refunding Bonds and interest thereof, of Five Thousand Dollars ($5,000.00) or more, said surplus shall be used by the Board of Bond Trustees of the Ocean Shore Improvement District for the purchase of the Highway Refunding Bonds herein authorized, provided such purchases do not impair the ability of the District to make the interest and principal payments as they become due."

It will be observed that Section 7 of the aforesaid resolution provides the machinery or set up controlling the detailed manner of calling and retiring the said bonds.

Section 8 of the resolution provides:

"That for the purpose of adequately providing for the payment of the interest coupons and for a Sinking Fund for the retirement of all of said Highway Bonds herein authorized, the Board of Bond Trustees of Ocean Shore Improvement District covenants and agrees with the Holders of the Highway Refunding Bonds, that in the annual budget and ad valorem tax levy to be prepared and made in each of the years A. D. 1933 to A. D. 1962, inclusive, there shall be included a levy of an ad valorem tax on all property in the District subject to the levy and collection of such tax in an amount which, together with any other revenue and income applicable or pledged to the payment of the interest and principal requirements of said Highway Refunding Bonds,

will aggregate annually not less than One Hundred Five Thousand ($105,000.00) Dollars. Such tax to be levied and computed upon the extended and finally equalized valuation of such taxable property in the District and upon the assumption that the percentage of tax collections #for the current year under consideration will not exceed the average percentage of collections of ad valorem taxes for the last past three tax collection years immediately preceding the tax year for which the levy is being made. That in the determination of a levy for an ensuing year's interest and Sinking Fund requirement, a sufficient levy will be made to provide for the interest and principal maturities of the next year succeeding that in which the budget is being made and prepared.

"There is hereby pledged for the payment of the Highway Refunding Bonds herein authorized all revenues and income of the District derived from any and all sources other than ad valorem taxes now appropriated by law for the payment of interest and principal of indebtedness created for Highway purposes, and any and all revenues and incomes of said District now or hereafter derived from sources other than ad valorem taxes, and not otherwise specifically appropriated by law for other purposes, shall be and are hereby pledged to the payment of the Highway Refunding Bonds of said District as herein authorized and that when such incomes or revenues as allocated are made available to said District, such income and revenue will be converted and placed in the Interest and Sinking Fund account for the Highway Refunding Bonds herein authorized and will not be used or appropriated for any purpose other than in the payment of interest to accrue from time to time on said Highway Refunding Bonds and for the retirement of said bonds herein authorized, except, however, any such income or revenues after interest for the current year has been provided for or

set aside, shall be used to reimburse the Ocean Shore Improvement District Refunding Agency its expenses incurred and made under the terms of the refunding program for this cause of refunding bonds, dated the 27th day of March, A. D. 1933. After such expense is paid, all of such income and revenue received under any allocation or made available, shall be placed in the Interest and Sinking Fund Account for said Highway Refunding Bonds and shall be used exclusively for the purpose of paying interest and retiring said bonds as herein authorized."

It has been made to appear that the fiscal agents in the refunding program of the district will receive under the terms of the agreement a fee of 3% of the bonds exchanged, and it is contended that the 3% commission should not be had or allowed on the moneys of the district now and as of December 1, 1938, with the State Board of Administration, but that these moneys approximating $35,000.00 should be used as required by law to retire bonds as provided for in the said resolution adopted by the district on December 1, 1932. The moneys on hand, as contended, should be used to pay off and retire outstanding bonds, thereby reducing the total amount of the bond indebtedness as of December 1, 1938, approximating $35,000.00. The contract between the Board of Bond Trustees and the fiscal agents providing for the payment of a commission of 3% should not apply to the moneys with the State Board of Administration because these moneys were fully pledged for the payment of the bonds when the resolution was adopted authorizing their issue.

The case at bar is ruled by Chamberlain v. City of Tampa, 40 Fla. 74, 23 So. 572. The fund can be used only for the purpose contemplated by the resolution. The State Board of Administration has not been made a party to this suit and the restraining order enjoins each member of the Board of

Bond Trustees of the Ocean Shore Improvement District
from directing or requesting the State Board of Administra-
tion to use the money now and as of December 1, 1938, for
any purpose other than the application of the same to the
liquidation, payment or retirement of the bonds issued under
the resolution dated December, 1932. We find no error in
the record. See State, *ex rel.* Florida National Bank, v.
State Board of Administration, 115 Fla. 753, 154 So. 876;
State, *ex rel.* Andrews, v. Sholtz, 120 Fla. 423, 162 So. 865;
Sholtz v. State, *ex rel.* Chalmers, 123 Fla. 100, 166 So. 319.

The order or decree appealed from is hereby affirmed.

TERRELL, C. J., and WHITFIELD, BUFORD, CHAPMAN and
THOMAS, J. J., concur.

BROWN, J., dissents.

BROWN, J. (dissenting)—It seems to me that the opinion
and decision of this court on the first suit brought by ap-
pellee J. Frank Isaac in which he obtained an injunction
against the members of the Board of Bond Trustees of
Ocean Shore Improvement District, which order was re-
versed by this court just a few weeks ago, is *res judicata*
upon the matters presented in this suit. In the opinion of
this court in that case it was said:

"It affirmatively appears on the record that a gross saving
in the sum of $411,550.00 will accrue to the District if the
September, 1938, contract is carried out. It is not necessary
to a decision of this case for us to pass upon the legal suf-
ficiency of the January, 1938, contract or to decide that the
same was cancelled or set aside by the new contract of Sep-
tember, 1938, which can be decided when brought to this
Court, but the sole question presented on this record, in
absence of allegations of fraud, bad faith or improper con-
duct on the part of the members of the Board of Bond
Trustees of the District, is whether or not they had the

power under the law to pass the necessary resolution and enter into the contract dated September 1, 1938.

"We think the Board of Bond Trustees had the power and authority to enter into the contract for the purpose of perfecting an extension of time of payments of the bonds now before us whereby a saving of $411,550.00 can be obtained for the District by entering into the agreement for a refund thereof. See Chapter 10013, Laws of Florida, Special Acts of 1923, as amended by Chapter 10562, and 10952, Special Acts of 1925, Laws of Florida, and Chapter 15772, Laws of Florida, Acts of 1931."

The contract of September 1, 1938, included the following:

. "On or before November 10, 1938, at such date as is to be directed by us, the District will, in accordance with the law, offer for sale such amount of Highway Refunding Bonds of 1937 as have not been then exchanged for the old outstanding bonds. At such advertised sale we agree to submit a bid of not less than par and interest for all such Highway Refunding Bonds of 1937 as are advertised for sale, the bonds to be delivered to us, if we are the successful bidders, accompanied by approving opinion of Messrs. Caldwell & Raymond, at such bank as we may designate where we shall make payment for same so that funds shall be made available to the District on or before December 1, 1938, at Guaranty Trust Company of New York City for the payment of the now outstanding bonds called for redemption on that date. It is understood that we are to have the right to exchange, prior to November 1, 1938, any portion of the outstanding bonds of the District for an equal par amount of said Highway Refunding Bonds of 1937. The purpose of this contract being to retire by sale of Highway Refunding Bonds of 1937, or exchange thereof, the present outstanding approximately $1,414,000. of Highway Refunding Bonds

of said District, dated December 1, 1932, such retirement to be effected on or before December 1, 1938."

When Isaac's first suit was filed, he as a member of the Board must have known that the Board of Bond Trustees of said District proposed to sell a sufficient quantity of the proposed new refunding bonds to provide them with funds to redeem all outstanding bonds which had not been refunded by exchange on November 1, 1938, and that the September contract made no provision for the use of accumulated gasoline funds in the hands of the Board of Administration for the purchase of bonds on December 1st. Indeed, it is doubtful that such a plan would have been feasible, for it would have required the Board to wait until December 1st before it could know the amount of funds available on December 1, 1938, for that purpose, at and after which time it would be impossible to give the necessary notice of sale and sell the bonds in time to have the money available on December 1, 1938, for the redemption of the $1,052,000.00 of the bonds which then had been redeemed or refunded by exchange.

The general rule is that a formal adjudication is final and conclusive, not only as to matters actually determined, but as to every other matter which the parties might properly have litigated with regard to the subject matter of the litigation and coming within the legitimate purview of the original action, both with respect to matters of claim and defense. See Peacock v. Feaster, 52 Fla. 565, 42 So. 889; Hay v. Salisbury, 92 Fla. 446, 109 So. 617; Sparks v. Ewing, 120 Fla. 520, 163 So. 112; 34 C. J. 818; 13 Stand. Proc. 140-142.

It would also appear that appellee was guilty of laches with regard to this matter. Smith v. Daffin, 115 Fla. 418, 155 So. 658.

The refunding bonds here involved were validated and the

decree of the lower court affirmed by this court in August, 1938.

The contract of September 1st, 1938, which this court held the Board of Bond Trustees had the power to make, provided for a sale of said bonds, after due advertisement, on or before November 10, 1938, and the fiscal agents with whom the contract was made bonded themselves by said contract to submit at such sale a bid of not less than par and interest for all such highway refunding bonds of 1937 as are advertised for sale. The bonds to be delivered to such fiscal agents, if they were the successful bidders, at such bank as they might designate, at which bank they would make payment for same, so that funds would be made available to the District on or before December 1, 1938, for the payment of the outstanding bonds called redemption on that day.

The bill of complaint does not to my mind show that the District, prior to December 1, 1938, can use this $35,000.00 now in the hands of the State Board of Administration, for the purchase of outstanding bonds of the 1932 issue.

This bill of complaint was filed before the Circuit Judge on November 3, 1938, on which date the fiscal agents, pursuant to the contract of September 1, had filed with the Board a sealed bid for the purchase of the said $1,052,000.00 of the bonds which had not been redeemed or exchanged.

The new refunding bonds of 1937 are, under our decisions, renewals or extensions of outstanding bonds of 1932, and the gasoline tax funds which have accumulated to the credit of the District in the hands of the State Board of Administration may therefore be applied to the bonds of 1932 now outstanding or to the refunding bonds of 1937. In either event the funds go to the reduction of the same indebtedness, and are used for the purpose specified by the statute in the payment of outstanding principal or interest on the bonded debt of the District.

We have already held, on the previous appeal, that the Board had the power to make the September contract, and that contract made no provision for the use of the accumulated gasoline funds in the hands of the Board of Administration for the purchase of the bonds on December 1st.

I see no reason therefore why the appellee, who was complainant in the court below, had any legal or equitable right, either as a member of said Board or as a taxpayer, to enjoin the Board from carrying out the said contract of September 1st, which this court found would result in a gross saving of $411,550.00 to said District. I therefore think that the order appealed from should be reversed with directions to dissolve the injunction.