DODGE TAYLOR, Appellant, v. B. A. WILLIAMS, *et al.,* Appellees; W. J. HOWEY COMPANY, *et al.,* Petitioners, v. B. A. WILLIAMS, *et al.,* Respondents.

195 So. 184
En Banc
For Former Opinions see 141 Fla. 402, 195 So. 175, 181
Opinion Filed April 2, 1940

*Thos. B. Adams, Duncan, Hamlin & Duncan,* for Appellant and Petitioners;

*J. W. Hunter, Harry P. Johnson, Robert J. Pleus, D. C. Hull, Hull, Landis & Whitehair,* for Appellees and Respondents.

PER CURIAM.—The following provisions contained in the bond copied in the record and dated July 1, 1935, remain in the bonds after the eliminations stated in the opinion, viz.:

"Bond No. ............                    $...................

"UNITED STATES OF AMERICA

"STATE OF FLORIDA

"COUNTY OF LAKE

"ROAD AND BRIDGE REFUNDING BOND

"KNOW ALL MEN BY THESE PRESENTS: That the Board of County Commissioners of the COUNTY OF LAKE, in the State of Florida, for and in behalf of the South Lake County SPECIAL ROAD AND BRIDGE District, in said County, hereby acknowledge itself to be indebted, and, for value received, hereby promises to pay to the bearer on the first day of July, A. D. 19......, the principal sum of ....................... DOLLARS with the option of prior redemption as hereinafter provided, and to pay interest on said sum, as hereinafter specified, from the date hereof until paid, or until called for redemption * * *.

"In the event of the exercise of such right to call, thirty days notice of such redemption will be given by filing and publication as provided by the resolution adopted by the Board of County Commissioners of said County authorizing

the issuance of this bond. Said bond, when so called, shall cease to bear interest on such redemption date * * *."

Such provisions retained in the bonds reserve the right to recall as well as provide the method of exercising the right to recall the bonds before maturity. However, in order to avoid any possible controversy on the point the following provisions shall remain a part of the bonds, viz.: "The right is hereby reserved to call and redeem all or any part of the issue of bonds of which this bond is one on any interest payment date, six months, or more, prior to maturity, according to the following terms and conditions: At par, plus accrued interest at the rate then prevailing, * * *."

The case of Dodge Taylor v. B. A. Williams, *et al.*, and W. J. Howey Company, *et al.*, were submitted as companion cases. The decree in the Taylor case was reversed on appeal and the orders in the Howey case were quashed on interlocutory certiorari under the rules of this Court. In each case the court below may allow amendments and further proceedings as are proper.

Refunding bonds and the proceedings for their issuance should contain only appropriate and unambiguous provisions for extending the original bond obligation with appropriate provisions as to the rate of interest and dates of payments.

Courts do not define the prospective duties of officers under the law where not required for the determination of matters presented for decision.

Under amended Section 6, Article IX, Constitution, Chapter 15772, Acts of 1931, provides for the issue and the sale or exchange of refunding bonds of counties, municipalities and districts by officials.

No part of the proceeds of the second gas tax either before or after allocation can be used directly or indirectly

or otherwise to pay commissions, fees or expenses of any nature for the issue, sale or exchange of refunding bonds.

Chapter 16807, Acts of 1935, does not cure invalid provisions in the bond refunding contracts.

It does not appear that taxation for "hospitalization" and health or other purposes render illegal any authorized taxes to pay district road bonds.

If land owners did not take advantage of the Murphy Act, that does not affect authorized tax levies upon the lands.

The opinion in the Taylor case holds that the 1935 refunding contract, resolution and bonds and the 1939 refunding contract and resolution contain illegal provisions that should be eliminated, viz.: provisions as to deferred interest coupons on refunding bonds; pledge of resources not contained in the original bonds; use of interest and sinking funds in paying fees, commissions or expenses for refunding purposes. The contracts and resolutions of 1935 and 1939 are similar and quotations from the 1939 contract and resolutions appear in the Taylor opinion. The discussion in the Taylor opinion is appropriate to the main questions presented in the single set of briefs filed in the companion case.

The Howey opinion refers to the conclusions stated in the Taylor opinion as to the illegal provisions of the refunding contracts and resolutions.

The order striking portions of the amended bill of complaint as amended, in the Howey case, included allegations as to illegal payments from the interest and sinking funds. An injunction against further payments was prayed for and denied. On certiorari the order was quashed so that appropriate proceedings may be had on pleadings and proofs, and decrees rendered in due course.

References in the Howey opinion to the refunding resolution and contract of 1939, which were in part quoted in the Taylor opinion, with conclusions thereon, made it unnecessary to quote or to cite in the Howey opinion similar provisions in the refunding contract and resolutions of 1935, the illegal provisions of the two contracts having the same effect, and the two cases were presented as companion cases.

Matters more properly litigated in other proceedings should not be discussed in the opinions in these cases.

Each of the petitions for rehearing and for modification of opinions is denied.

TERRELL, C. J., WHITFIELD, CHAPMAN and THOMAS, J. J., concur.

BROWN and BUFORD, J. J., concur specially.

BUFORD, J. (concurring specially).—I concur in the view expressed in the *per curiam* opinion prepared pursuant to hearing on petition for rehearing, but I also think our opinions filed February 23, 1940, should be modified further. In the opinion in the Taylor case we said:

"In the issuing of bonds to be paid by taxation, the official duties of the county commissioners include the administrative function of providing directly for the printing, approval and other legal or fiscal matters not including mere technical or ministerial services which may be performed by employees. As shown by the resolutions adopted August 7, 1939, by the county commissioners, the contract of August 7, 1939, states that R. E. Crummer & Company, 'first party' is 'a Delaware Corporation,' and the county commissioners, 'second party.' As stated in the agreement of August 6, 1935, R. E. Crummer & Company 'represents the holders of a substantial portion of the outstanding bonds of Lake County.' The law does not contemplate or permit the appointment of a foreign corporation representing "the

holders of a substantial portion of the outstanding bonds' as fiscal agent for the county or districts in managing or controlling any of the official functions involved in the issuing of refunding bonds. The contract of August 7, 1939, provides:

" 'That first party (R. E. Crummer & Company) shall defray all expenses incident to: (a) assembling and exchanging the bonds herein proposed to be refunded; (b) printing the said refunding bonds; (c) the representation of Second Party (the county commissioners) in legal proceedings to validate said refunding bonds; (d) obtaining the approving opinion of nationally recognized bond counsel upon the procedure used for the issuance and validation of said Refunding Bonds, said counsel to be selected by First party; (e) all other expenses in connection herewith which may be approved by First Party."

"Nor does the law permit the payment of money from the sinking funds of the county or districts as fees for a refunding agent. Pierce v. Isaac, 135 Fla. 101, 184 So. 669. When such an agent may legally be employed for services in nowise official in their nature, proper compensation for such service may be provided for as the law authorizes."

A careful analysis of the contract of August 7, 1939, referred to in the opinion, *supra,* discloses that we misconstrued the import of the quoted provision of the contract. By the terms of the contract the fiscal agent does not undertake to perform the official duties of the county commissioners but only undertakes to "defray the expense" required to be incurred by the taxing unit in connection with the accomplishment of those several things which the county commissioners must do to consummate the plan. No authority is hereby attempted to be vested in the fiscal

agent to "manage or control any of the official functions of the board of county commissioners. The fiscal agent was required by the terms of the contract to defray certain expenses incident to the consummation of the refunding program. The only matters in which the fiscal agent was authorized to exercise control was in the selection of "nationally recognized bond counsel" to render an opinion on the validity of the bonds. This is a matter as to which the bond buyer generally exercises the privilege of dictating to the issuing authority. The fiscal agent took all the risk of successfully consummating the refunding plan because under the contract the county was not obligated to reimburse the fiscal agent for any expenditures until the successful termination of the plan and only then and from a fund to be produced for that purpose.

The provision contained in the contract for reimbursement of expenditures, and for compensation for services to be rendered in the performance thereof, is as follows:

"Section 10. That First Party shall be reimbursed and compensated for expenses incurred and services rendered, respectively, in connection herewith in the following manner: By Second party paying to First party, or its assignee, a sum equal to two (2%) per cent on the par value of bonds exchanged hereunder, the amount due to be evidenced by certificates issued to First party by the Clerk of the Board of County Commissioners of Second party setting forth the bonds exchanged and amount due, which certificate the said Clerk is authorized and directed to issue by the execution of this contract. Said certificate shall be paid out of the interest and sinking fund of the issuing units out of funds available each six months after interest then due has been paid, or out of any other funds legally applicable thereto."

Such a contract as this, with but slight difference, was held valid by this Court in the case of Pierce, *et al.*, v. Isaac, 134 Fla. 666, 184 Sou. 509. That contract was held valid necessarily on the theory that the expense incident to refunding a bond issue is a necessary incident to the handling and consummating of such matters. It is an incident expense to the consummation of any bond refunding plan and it is immaterial whether the expense so incident be paid from some available fund on hand, or be advanced to the taxing unit undertaking to issue bonds to be repaid by the unit when a fund available for that purpose is accumulated.

It also must be recognized that it is a matter of common knowledge that where a taxing unit is in default in meeting its bond and interest obligations and finds it advisable to refund, some fiscal agent must in most cases be employed because the taxing unit is (a) without facilities to locate the bondholders and bring them to a frame of mind to surrender their bonds and take a bond bearing less interest and having a less favorable maturity; (b) is without facilities to bring the bonds into one central control and (c) is without available funds with which to pay the preliminary expense incident to the attempted issuance of such refunding bonds. These are the burdens which the fiscal agent assumes.

The expense being an incident to a readjustment of the debt evidenced by the original bonds and to be evidenced by the refunding bonds, it is just and equitable and logically legal that the fund with which to pay such incidental expense should come from the identical source from which is to come the funds with which to discharge the debt and the interest as it accrues on the debt.

So it is that the taxing unit having the power to levy

taxes to pay the debt according to the terms of the re-
adjustment may levy the necessary tax on the same tax
resources to pay this incidental expense of readjustment.
This, however, must be done by proper resolution adopted
in connection with the issuance of the involved bonds and
may not be paid from a fund provided by resolution levied,
assessed and collected for or duly appropriated to another
purpose. See Pierce, *et al.,* v. Isaac, 135 Fla. 101, 184
Sou. 669, where we held:

"Where resolution authorizing issuance of highway re-
funding bonds provided that the improvement district's
money with the State Board of Administration should be
used as required by law to retire bonds, such bonds could
be used only for the purpose contemplated by the resolution,
and not for payment of fees of fiscal agents for their
activities in refunding.

"A temporary order restraining improvement district
from delivering highway refunding bonds to any bidder or
purchaser, except such an amount as could not be paid off
or retired by the use of funds on hand, and from directing
or requesting the State Board of Administration to pay
any refunding fees to the district's fiscal agents, was not
erroneous."

If the resolution authorizing the issuance of the bonds
involved in the last mentioned case had provided among
other things for the levy of a tax to produce a fund suf-
ficient to create an adequate sinking fund to retire the bonds
at maturity or on call, and to pay the interest as the same
should become due and payable, and with which to pay
the expense incident to the consummation of the refunding
plan, we apprehend that such a resolution would have been
held valid and the funds derived from the levy and collection

of such tax available to be used for the purposes named in the resolution.

So it is that the contract of August 7, 1939, *supra,* contemplates the adoption of a resolution by the issuing authority in harmony with the provisions of the contract and if and when such a resolution is adopted and the tax is levied, assessed and collected in accordance therewith the fund thereby produced will be available for complying with the terms of the contract.

The contract involved in the first Isaac case, 134 Fla. 666, 184 Sou. 509, was one between the issuing authority and a Florida corporation. In no material matter was it different from the contract here involved. Certainly, the fact that the contract here involved was with a foreign corporation authorized to do business in this State can have no controlling effect on its validity.

So it is the original opinion filed herein on February 23, 1940, should be clarified to conform to views expressed in the *per curiam* opinion, *supra,* and modified to conform to the views herein expressed and when so modified the petition for rehearing should be denied.

BROWN, J., concurs.