STATE, MARGARET E. MARSHBURN, Intervener, v. BOARD OF PUBLIC INSTRUCTION, LEVY COUNTY.

196 So. 452
En Banc
Opinion Filed May 24, 1940

*T. E. Duncan,* for Appellant;

*Horace S. Wilson* and *Oven & Oven,* for Intervener-Appellant;

*W. F. Anderson* and *Robert J. Pleus,* for Appellee.

WHITFIELD, J.—The State avers that the bonds issued in 1925 by the Board of Public Instruction are invalid because the statute authorizing the bonds to be issued violates Section 8, Article XII, of the Florida Constitution, and cites in support of its contention Barrow v. Moffett, 95 Fla. 111, 116 So. 71. The Barrow-Moffett case and other similar cases are distinguished from cases like this one in State v. Board of Public Instruction, Dade County, 126 Fla. 142, 170 So. 602, in which latter case original bonds had been issued for school purposes and were to be refunded. See also State Board v. County Board of Pub. Inst., 138 Fla. 767, 190 So. 253; Board Pub. Inst., Pinellas Co. v. State *ex rel.* Beers, 127 Fla. 211, 172 So. 922.

In Barrow v. Moffett, *supra,* the suit was to *validate original bonds proposed to be issued.* This Court reversed a decree of validation because it did not clearly appear that the purposes for which the bonds were to be issued were properly within the provisions of Section 8, Article XII, of the Constitution. See also State v. Bd. Pub. Inst., Ind. Riv. Co., 98 Fla. 1152, 125 So. 357; Leonard v. Franklin, 84 Fla. 402, 93 So. 688. After bonds are issued and sold under statutory authority by the County Board of Public Instruction, and the proceeds used for any authorized public free school purpose in good faith, the bonds will not be adjudged invalid unless they were not issued for any authorized public free school purpose under the controlling organic provisions. The refunding bonds in this case have not been approved by the required vote of the electors of the county.

A citizen taxpayer intervener also challenges the validating proceedings.

The statutes under which the original bonds were issued are not referred to in the proposed refunding bonds. Chapter 10780, Acts of 1925 (Special) authorized not exceeding $126,000.00 of bonds, and it is not shown that a larger amount is legally outstanding.

Confining tax collections under Section 8, Article XII, to refunding bonds when there are original bonds outstanding, is not authorized because all of the valid original bonds have a right to participate in the funds collected under Section 8, Article XII. The original statute of 1925 made taxation under Section 8, Article XII, applicable to all the bonds issued thereunder, and the refunding bond statute cannot change that provision which is contractural, and does not purport to do so.

If the refunding bonds do not merely extend the original obligation to all the bonds issued under Section 8, Article XII, then amended Section 6, Article IX, is violated as well as the contract clause, and also Section 8, Article XII. . The specific amounts from annual tax levies that are pledged in the resolutions and in the proposed refunding bonds are excessive for annual payments of interest and redemption of bonds, and operate to violate Section 8, Article XII, which does not contemplate that all collections under Section 8, Article XII, be used for bond payments to the serious detriment of current needs of the public free schools of the county. Nor does Chapter 10780 so contemplate. The reduction in interest in the refunding bonds is only ½% per annum, and the refunding bonds to be issued for past due interest increase the amount of refunding bonds, and the large annual payments specifically required may make the refunding bonds an increased burden and not a substantial benefit to justify refunding. If defaults in payments occur, the interest rate reverts to 5½%.

Refunding bonds cannot be paid from any county school funds included in Section 9, Article XII, except a reasonable part of the funds that may be derived from levies under Section 8, Article XII. See Bryan v. Board, Series A case, filed April 30, 1940.

As there is in the transcript of the record brought here no copy of the original bonds which are to be refunded by the bonds here sought to be validated by judicial decree under the statute, and as under the Constitution refunding bonds can be issued without an approving vote of electors, only to extend or continue the obligations of the original bonds except as to the rate of interest and time of payment, the absence of a copy of the original bonds makes the record incomplete for judicial action thereon, in determining whether the refunding bonds merely renew the obligations of the original bonds.

It appears that there were on January 1, 1939, outstanding a total of $144,000.00 of 5½% bonds and matured interest coupons and judgments representing matured bonds and coupons. It also appears that four of the original bonds are made payable every year. The proposed refunding bonds and the resolutions adopted for their issue require a tax levy sufficient to raise $3,500.00 in 1938, $7,000.00 in 1939, and $13,000.00 in 1940 and each succeeding year until all of such refunding bonds and interest thereon have been retired. Four of the refunding $1,000.00 bonds are to be redeemed annually beginning in 1943, and other bonds are subject to call and redemption on any interest payment date prior to maturity upon notice, etc., as provided in the refunding bonds and resolutions. The Constitution does not contemplate that the county school funds derived from the ad valorem tax levied under Section 8, Article XII, Constitution, that may under authorized conditions be used to pay indebtedness legally incurred for public free school

purposes, shall be so pledged or disbursed as to unduly reduce the funds raised under Section 8, Article XII, for the current support and maintenance of public free schools, see State v. Board of Public Instruction, Dade County, 126 Fla. 142, text page 152, 170 So. 602, and creditors who are to be paid from tax levies under Section 8, Article XII, are held to notice of the intendments and limitations of the Constitution as to such tax levies.

The required specific levy to yield $13,000.00 annually beginning in 1940, is clearly excessive for current interest on bond payments exclusively. With an assessment capable of producing at most not more than $15,000.00 annually and an annual interest charge of $7,200.00 at 5% on $144,000.00 5% bonds, and $4,000.00 for annual redemptions, making $11,200.00, there will be an annual excess of $1,800.00 collections for bond payments, with a greater excess as interest payments decrease due to redemption of four bonds each year. It is not shown that the specific annual payment exactions accord with the obligations of the original bonds; and the specific annual payments required do not accord with the requirements of the statute under which the bonds were issued, and are not in harmony with the intendments of Section 8, Article XII, Constitution.

The decree of validation is reversed.

TERRELL, C. J., BROWN, CHAPMAN and THOMAS, J. J., concur.

BUFORD, J., dissents.

BUFORD, J. (dissenting).—Appeal brings for review decree validating refunding bonds. Appellant presents five questions for our consideration as follows:

"Question 1. Where no specific reference or recital is made on the face of the proposed refunding bonds sufficient to identify and distinguish the original bonds to be

refunded, is there a continuation and extension of the original indebtedness attempted to be refunded thereby, or do such purported refunding bonds in effect constitute a new indebtedness which would be unauthorized without an election pursuant to Section 6, Article IX of the Constitution of the State of Florida?

"Question 2. Where the homestead is subject to taxation for the payment of original bonds, now sought to be refunded, and there is no specific reference or recital made on the face of the proposed refunding bonds sufficient to produce an extension and continuation of the original obligation, and the homestead thereby escapes taxation for the payment of the refunding bonds, creating a change in the nature of the original obligation adding an increased tax burden to non-homestead property, may such refunding bonds be issued without an election pursuant to Section 6, Article IX of the Constitution of the State of Florida?

"Question 3. Does a provision in the refunding resolution obligating the board to levy, assess, collect, and apply annually $13,000.00, violate the provisions of Section 22, Chapter 15,772, Laws of Florida 1931, where it clearly appears that said sum of money is grossly in excess of the interest and sinking fund requirement and that the surplus so arising is to be used to the purchase and call of refunding bonds prior to the maturity dates stated therein?

"Question 4. The entire record, as well as the proposed refunding bond to be issued, being silent as to the retirement prior to maturity of the bonds to be refunded, was it affirmatively shown, where the County was required to levy, assess, collect and apply annually stated sums, to-wit, $3,500.00 for 1938, $7,000.00 for 1939, $13,000.00 for each subsequent year, that no change was made in the nature of the original obligation by accelerating and providing for

the retirement of such new obligation that would invalidate such new bonds unless approved by a majority of the freeholders pursuant to Section 6 of Article IX of the Constitution of the State of Florida?

"Question 5. Does the validation and issuance of refunding bonds payable from the ten mills provided by Section 8 of Article XII of the Constitution violate such constitutional provision where, at 100% collection, such ten-mill levy will produce only $15,000.00 and where the sum of $13,000.00 thereof is pledged to the payment of said bonds, and where it also appears that the sum of $6,000.00 annually is necessary for the operation of the public schools of the county, and that the payment of $13,000.00 on the bonds will materially disturb if not destroy the operation of the public schools of the County?"

Questions 1 and 2 are presented together.

It is contended that the reference appearing in the face of the refunding bonds is not sufficient to meet the rule stated in Fleming v. Turner, 122 Fla. 200, 165 Sou. 353.

The recitations in the bond are:

"* * * This negotiable bond * * * is issued in exchange for and as a continuation, extension, merger and renewal of a like amount of valid subsisting bonded indebtedness of said Board issued prior to November 6, 1934, and outstanding at the date of the passage of said resolution, and for the purpose of refunding said indebtedness; * * * and that, before the issuance of the issue of bonds of which this bond is one, provision has been made for the levy and collection of a direct annual tax upon all property under the jurisdiction of said Board, except only such property as would be exempt from taxation under the provisions of the laws and Constitution of the State of Florida, which were in force and effect at the time of the creation of the in-

debtedness refunded hereby, * * *. Said tax, when levied, shall be a part of the tax provided for by Section 8 of Article XII of the Constitution of the State of Florida."

These recitations are sufficient to meet the requirements and such recitations were approved by us in State v. Board of Public Instruction of Dade County, 126 Fla. 142, 170 Sou. 602.

The third and fourth questions are considered together. The record shows that about sixty per cent of the debt to be refunded is in default.

It is not made to appear that the provision of the refunding resolution obligating the issuing unit to levy, assess, collect and apply annually $13,000.00 to interest and sinking fund violates Section 22 of Chapter 15772, Acts of 1931. See State v. City of Clearwater, 125 Fla. 73, 169 Sou. 602; and State v. City of Sanford, 128 Fla. 171, 174 Sou. 339.

The record shows that the entire fund to be raised by taxation is to be used in the payment of interest and the retirement of bonds. It is not necessary for us to repeat what has been said in this regard in the opinions promulgated in the cases above cited.

Question 5 is based upon what may be termed a problematical or anticipated condition. The matter challenged does not go to the validity of the bonds but is addressed to the wisdom of the policy which has been approved by the adoption of the refunding resolution. We can not assume that the assessed valuation of the property taxable to produce the funds will remain as it was some three or four years ago, but we may assume that the taxing authority had reason to believe that there will be funds available to meet the requirements necessary for the operation of public

schools and to meet the requirement for interest and sinking fund as provided in the proceedings.

The cases above cited are sufficient authority to support the validity of the issue in this regard.

In oral argument the appellant has challenged the authority of the taxing unit to appoint as its fiscal agent, to effectuate the exchange of the refunding bonds for the old bonds, a foreign corporation and relies upon the opinion of this Court in the case of Dodge Taylor v. Williams, *et al.*, filed February 23, 1940, not yet reported. The Court in the majority opinion in that case held:

"The law does not contemplate or permit the appointment of a foreign corporation representing 'the holders of a substantial portion of the outstanding bonds' as fiscal agents for the counties or districts in *managing* or controlling any of the *official functions* involved in the issuing of the refunding bonds." (Emphasis supplied.)

The present writer and Mr. Justice Brown were, and are, of the opinion that the agency contract involved in that case did not delegate to the fiscal agent any of the official functions involved in the issuing of refunding bonds. It was upon the theory that that contract did not delegate such official functions to the fiscal agent that the majority of the Court held the contract in this regard invalid. Neither the majority nor the minority opinion in that case held that the issuing authority could not employ an agency of its choice, either domestic or foreign, to effectuate the exchange of bonds. In fact, such contracts have been repeatedly upheld by this Court as valid. See Pierce, *et al.*, v. Isaac, 135 Fla. 101, 184 Sou. 669; Pierce, *et al.*, v. Isaac, 134 Fla. 666, 184 Sou. 509, and cases there cited.

The record in the instant case shows nothing more than that the issuing authority has agreed that a foreign cor-

poration authorized to do business in Florida has been designated as the fiscal agent to exchange the refunding bonds for the evidence of the original debt, par for par. The record does not show that the issuing authority has assumed any obligation to pay the designated fiscal agents any sum from any source as compensation for such services.