**BRADFORD COUNTY, FLA. v. NUVEEN et al.**

No. 10348.

Circuit Court of Appeals, Fifth Circuit.

Jan. 27, 1943.

Giles J. Patterson, of Jacksonville, Fla., and Marcus F. Brown, of Starke, Fla., for appellant.

Wm. P. Allen and J. Velma Keen, both of Tallahassee, Fla., for appellees.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

The appellees John Nuveen and John Nuveen, Jr., sued Bradford County to recover compensation due them as "refunding agent" under a contract with the county made August 20, 1934, and supplemented December 3, 1934, to refund its bonded indebtedness, claiming two percent of the par amount of $897,000, less $5,712 paid. By amendment a like amount was also claimed on a quantum meruit for work done and services performed. The defenses were that the contract was illegal, that payment under it was to be made only from savings made within three years by buying up the bonds below par, and that the whole of such savings, $5,712, had been paid; and that nothing was owing on quantum meruit. The evidence was not in conflict, most of the facts being admitted. No jury was demanded, and the district judge held himself bound by the decision of the Florida Supreme Court in Taylor v. Williams, 142 Fla. 402, 195 So. 175, to declare the contract invalid as an illegal delegation by the County Commissioners of their public duties, but that since the invalidity was not by reason of express prohibition of law, but by reason of an interpretation of law made only after the contract had been performed by the Nuveens, compensation could be recovered under the principle declared in State ex rel. Nuveen v. Greer, 88 Fla. 249, 102 So. 739, 37 A.L.R. 1298, and cases from other jurisdictions; and he allowed recovery for two percent as the reasonable value of the services, less certain credits. The county appeals.

The contract of August 20, 1934, recites that certain creditors of the county, represented by the Nuveens, of Chicago, Illinois, had submitted to the County Commissioners a program for refinancing all the bonded indebtedness, and the plan was acceptable to the Commissioners and holders of larger blocks of the bonds, therefore the county and the Nuveens agree that the Nuveens will act as a refunding agency for consummating the plan, and as such shall have exclusive authority to act in carrying out the refinancing program, unless otherwise mutually agreed, confined and limited to these conditions: All the bond issues are set forth; the county agrees by appropriate resolution to authorize refunding bonds of equal amount, at the same interest of six percent, but with due dates of the new bonds extended ten years beyond those of the old; the county agrees to execute them, and on approval of bond counsel to deposit them in escrow with a named Chicago Bank for exchange for the old bonds; the county also agrees to provide specified tax levies and from the taxes and all other money allocated to debt service to create a sinking fund, from which bonds would be bought below par. It was agreed that the Nuveens should take all proceedings deemed to be necessary in carrying out the

refinancing program hereinbefore set out, to the end that the bonds shall be general obligations of the county and pledge its full faith and credit; and that the Nuveens should defray all expenses incident to the assembling of the bonds to be refunded, the preparation of the refunding bonds, and in representing the county in validating them and getting approval by bond counsel. The Nuveens agreed to get as counsel named bond attorneys of Chicago, and a local counsel satisfactory to the county, if the Nuveens could agree on fees with such counsel, otherwise they might engage other counsel. To reimburse the expenses and for reasonable compensation, the county agreed to pay the Nuveens two percent of the par value of all the bonds exchanged at a rate not to exceed one-third of the earned amount each year, from funds accruing to the county by purchasing the refunding bonds at less than par, this general intention to be expressed later by a supplemental memorandum detailing more specifically how this result would be obtained. The final agreement was that the Nuveens were to determine whether it was feasible to effectuate the plan if all the indebtedness could not be assembled under it, that both parties would use their best efforts to induce holders of bonds to participate in it, and the plan should constitute the exclusive refinancing program of the county.

In carrying out this contract, the Nuveens, by their representative and the attorneys they employed, drafted the refunding resolution in Chicago, and that appointing the Chicago Bank as exchange agent, and the Commissioners passed them. The Nuveens had the bonds printed and the validation proceeding carried through. The Chairman of the Commissioners went to Chicago to sign the bonds. Nuveens paid all expenses as agreed, aggregating $5,591, and managed everything. By December 3 they had assembled and exchanged $727,000 par value of bonds,[1] and the supplemental agreement was executed as to the manner of paying the compensation, in accordance with the provision of the original contract, but stating expressly that if the refunding agent does not receive its remuneration in three years, this agreement shall continue in force until said obligation is satisfied in full or adequate provision made therefor. There was also a provision for severability if any part of the agreement was held invalid.

Before refunding, the old bonds were selling at or below 50. Afterwards, they or the refunding bonds could be and were bought before June, 1935, at 74.25, and by December at 92.50. During 1938 they were about par, and in 1939, being at par, the county called them at par according to their terms and refunded again at 4½% interest. That action of course prevented any further possibility of buying the first refunded bonds below par, and continuing to pay the Nuveens.

We are unable to distinguish this refunding agency contract from those condemned as illegal by the Supreme Court of Florida in Taylor v. Williams, 142 Fla. 402, 195 So. 175, 180; Id., 142 Fla. 562, 195 So. 184; Id., 142 Fla. 756, 196 So. 214; and Howey Co. v. Williams, 142 Fla. 415, 195 So. 181, 184. In the former case the court said: "In the issuing of bonds to be paid by taxation, the official duties of the county commissioners include the administrative function of providing directly for the printing, approval and other legal or fiscal matters, not including mere technical or ministerial services which may be performed by employees. * * * The law does not contemplate or permit the appointment of a foreign corporation representing 'the holders of a substantial portion of the outstanding bonds' as fiscal agent for the county or districts in managing or controlling any of the official functions involved in the issuing of refunding bonds. * * * The refunding resolutions and contracts are not in accord with law." In the latter case the court said: "The law contemplates that all official authority, duties and functions shall be exercised and performed by duly commissioned officers; the delegation of official authority, duties or functions by officials to nonofficials is not permitted by the laws of [Florida]." In the Tenth Circuit, City of Vero Beach v. Rittenoure Inv. Co., 10 Cir., 113 F.2d 269, where the city was seeking to enforce such a contract, the Florida decisions above cited were held conclusive, and to render the contract void. We must hold the same.

State v. City of Fort Myers, 145 Fla. 135, 198 So. 814, marks no departure from the Taylor and Howey cases. An inspection of the record before the Su-

---

[1] All of the $897,000 of bonds were finally exchanged.

preme Court of Florida shows that the case was one to validate refunding bonds in which the State objected to the validation because the resolution authorizing the bonds provided for two percent to be paid a fiscal agent out of the surplus in the sinking fund after each year's interest should be paid. The contract with the fiscal agent is not in the record, nor does it appear what he was to do, nor was any issue made about the delegation of official duties. The refunding proposed was in connection with a municipal bankruptcy proceeding, wherein the two percent to the fiscal agent had been approved by the bankruptcy court. Two successive mayors of the city testified, however, that while the fiscal agent paid the expenses he did not determine policies, but the city was free to determine its policy in every instance. The Supreme Court held the bonds valid under these circumstances, not passing upon the validity of the contract with the fiscal agent, which was not before it.

▮▮ Passing to the question of quantum meruit recovery, it is to be noted that it is "work done and services performed", and not money expended for the benefit of the county that is sued for. The cost of printing, validating and approving the bonds, of which the county took the benefit, and which it must have expended if the Commissioners had performed their duties for themselves, might well be recoverable from the county, the refunding itself being in all respects lawful. But the county has already paid $5,712, and the judge found that the Nuveens made a profit of $478 in buying bonds to be retired, for which they are accountable. Of the expense account of $5,591, about $2,000 is the cost of twenty trips from Chicago to Florida, which would not have been incurred if the Commissioners had done the business at home. No service has been pointed out by pleading or evidence which is not of the sort condemned as contrary to public policy by the Florida court. Services which cannot be contracted for expressly because contrary to public policy, cannot be recovered for on an implied contract or quantum meruit.

The judgment ought to have been for the defendant. It is reversed and the cause remanded with direction to enter such judgment.

HUTCHESON, Circuit Judge (concurring specially).

I concur in the judgment of reversal. I agree with the majority that "Services which cannot be contracted for expressly because contrary to public policy, cannot be recovered for on an implied contract or quantum meruit", and that if the contract was invalid as contrary to Florida public policy, no recovery could be had, and the judgment ought for that reason to have been for defendant.

It is my view, however, that the contract was valid because unlike the contracts in the cases the majority cites, this contract contemplates no diminution of the sinking fund but payment only out of profits made from purchase of bonds at less than face. Cf. State v. City of Fort Myers, 145 Fla. 135; 198 So. 814. But this view does not help plaintiffs for I think it perfectly clear that the contract provided not for the payment of any absolute sums but only for payment out of funds accruing to the county from bond purchases.[2] It being established not that the county earned and did not pay these amounts but that it had paid every dollar that it earned, the original contract furnished no basis for a recovery. Nor is the position of plaintiffs bettered by Par. 6[3] of the supplement agreement. Reciting that the refunding agent had fully and satisfactorily performed all services required of it pertaining to the refunding, it affirmatively established that there was no consideration for adding to the obligations of the county under the original contract, and if Par. 6 purported, to do so, it was without effect, to add to those obligations.

---

[2] Section 12 of the contract provided for payment of 2% of the par value of all bonds exchanged thereunder and that this payment shall be made at the rate of not exceeding 1/3 of the earned amount each year beginning the first year after the first exchange of bonds under this program, and shall be made from funds accruing to the county through the purchase of these refunding bonds at a price less than the par value.

[3] Par. 6. "That in the event the refunding agent does not receive its remuneration as specified in original contract of Aug. 20, 1934, within three years from Aug. 20, 1934, then this agreement shall automatically continue in force until said obligation is satisfied in full or adequate provision made therefor."