J. E. Pierce, Ross Parrish, D. J. Fuquay and R. S. Tolan, as members of the Board of Bond Trustees of Ocean Shore Improvement District in Flagler and Volusia Counties, *et al.,* v. J. Frank Isaac.

184 So. 509.
Division B.
Opinion Filed October 29, 1938.

*Alfred A. Green* and *Giles J. Patterson,* for Appellants;
*D. C. Hull* and *Hull, Landis & Whitehair,* for Appellee.

PER CURIAM.—This case is here for review on appeal from an order of the Circuit Court of Volusia County, Florida; (a) restraining the payment of 3% refunding fees to Leedy, Wheeler & Company; (b) an order dated October 3, 1938, overruling and denying a motion to dissolve the restraining order previously issued; (c) from an order overruling and denying a renewed motion to dissolve the restraining order previously issued, dated September 26, 1938. The case at bar grows out of two contracts entered into between the Board of Bond Trustees of Ocean Shore Improvement District, a taxing district created by Chapter 10013, Laws of Florida, Acts of 1923, as amended by Chapter 10952, Laws of Florida, Acts of 1925, and supplemented by Chapter 10562, Acts of 1925. The suit was filed by a tax payer and resident of the taxing district. The contract dated January, 1938, provided for the refunding and exchange of $1,482,000.00 of the bonds of the district of the issue dated December 1, 1932. The refunding bonds were validated and the decree of the lower court affirmed in this Court in August, 1938. The material portions of the contract dated January, 1938, are viz:

"That First Parties shall defray all expenses incident to: (a) assembling and exchanging the bonds herein proposed to be refunded, (b) printing the said Refunding Bonds, (c) the representation of Second Party in legal proceedings to validate said Refunding Bonds by counsel to be selected by

Second Party, (d) obtaining the approving opinion of nationally recognized bond counsel upon the procedure used for the issuance and validation of said Refunding Bonds, said counsel to be selected by First Parties, (e) all other expenses in connection herewith which may be approved by First Parties. * * *

"By Second Party paying to First Parties or their assignee, a sum equal to one and one-half per cent (1½) on the par value of bonds exchanged, sold or purchased, hereunder, the amount due to be evidenced by certificates issued to First Parties by the Secretary of the Board of Bond Trustees of Second Party setting forth the bonds exchanged and amount due, * * *"

Section 11 also provides:
" * * *

"(a)  First Parties shall exchange twenty-five per cent (25%) of the bonds proposed to be refunded hereunder on or before June 1st, 1938, and shall exchange fifty per cent (50%) or more of said bonds on or before October 1st, 1938, and shall exchange seventy-five per cent (75%) or more of bonds proposed to be refunded hereunder on or before December 1st, 1938, including all bonds due June 1st, 1940; and within six months thereafter exchange the entire outstanding indebtedness proposed to be refunded hereunder.
" * * *

"(c)  Unless the percentages and periods as outlined in (a) of this subsection are modified, as set forth in (b) of this subsection, then to the extent that First Parties have failed to exchange 75% of the bonds proposed to be refunded hereunder on or before December 1st, 1938, First Parties will purchase from Second Party sufficient Refunding Bonds at par and accrued interest to give Second Party a sufficient sum of money to pay, upon call, on December 1, 1938, unexchanged bonds in sufficient total to result in a

75% conversion on that date, including all bonds due June 1, 1940. As to the percentages required to be exchanged by First Parties subsequent to December 1, 1938, First Parties may, at their option, purchase from Second Party sufficient Refunding Bond at par and accrued interest to give Second Party a sufficient sum of money, to pay, upon call, the principal of unexchanged bonds in an amount necessary in order to meet the schedules set forth in (a) of this subsection.

"(d) As to any original bonds unexchanged as of July 1, 1939, First Parties will pay to Second Party, as liquidated damages, $15.00 per $1,000.00 bond then unexchanged.

"(e) If, at any time during the life of this contract, First Parties desire to forfeit this contract, they may do so on paying to Second Party $15.00 per $1,000.00 bond then unexchanged as full and complete liquidated damages; or, if First Party fails to meet the schedules set forth in (a) of this subsection, Second Party may, at its option, cancel this contract upon five days notice in writing by registered mail to the address of each of the parties of the first part above given, whereupon the Second Party shall be fully released and discharged from any and all obligations under this contract and any and all other contract obligation or arrangement with the First Parties relating to said refunding bonds and First Parties shall thereupon pay to Second Party, as liquidated damages for their default in the performance thereof $15.00 per $1,000.00 bond then unexchanged. * * *"

The material portions of the agreement dated September 1, 1938, obligating the refunding agents are, viz:
" * * *

"We are to be appointed Fiscal Agents for the District in all matters pertaining to and in connection with this issue of Refunding Bonds.

"1.  As such Fiscal Agents we are to pay the following items in connection with the issuance of the said refunding bonds:

"A.—Bond attorney approving opinion.

"B.—Furnish printed bonds ready for signature of proper officials.

"C.—Pay the District's attorney fee in connection with this issue.

"D.—All expenses incident to the contacting and exchange of bonds with holders thereof.

"2.  On or before November 10, 1938, at such date as is to be directed by us, the District will, in accordance with the law, offer for sale such amount of HIGHWAY REFUNDING BONDS OF 1937 as have not been then exchanged for the old outstanding bonds.  At such advertised sale we agree to submit a bid of not less than par and interest for all such HIGHWAY REFUNDING BONDS OF 1937 as are advertised for sale, the bonds to be delivered to us, if we are the successful bidders, accompanied by approving opinion of Messrs. Caldwell & Raymond, at such bank as we may designate where we shall make payment for same so that funds shall be made available to the District on or before December 1, 1938, at Guaranty Trust Company of New York City for the payment of the now outstanding bonds called for redemption on that date.  It is understood that we are to have the right to exchange, prior to November 1, 1938, any portion of the outstanding bonds of the District for an equal par amount of said HIGHWAY REFUNDING BONDS OF 1937.  The purpose of this contract being to retire by sale of HIGHWAY REFUNDING BONDS OF 1937, or exchange thereof, the present outstanding approximately $1,414,000 of HIGHWAY REFUNDING BONDS of said Distirct, dated December 1, 1932, such retirement to be effected on or before December 1, 1938.

"3.   For our services as above set forth, we are to be paid a sum equal to 3% of the par value of the bonds exchanged or taken up and paid for by us, or by the purchaser thereof, if we are not the successful bidders at the advertised sale, in accordance with the terms of this agreement.   Said sum is to be paid to us upon completion of the terms of this contract out of funds on hand with the District, including. funds held by the State Board of Administration to the credit of said District, in excess of monies required for payment of principal and interest as same become due and in the event sufficient funds are not available for the payment of the fee in full when due, then the balance is to be paid as funds become available.   On bonds purchased and taken up by us. the amount of our fee due on such bonds, shall be paid simultaneously with delivery of said bonds to us and payment therefor.

"4.   As evidence of good faith on our part, we hand you herewith cashier's check of the Florida National Bank of Jacksonville, in the amount of $20,000.00, which check is to be held by you uncashed, and to be returned to us when the total amount of HIGHWAY REFUNDING BONDS OF 1937 have been delivered either in exchange or paid for in accordance with terms herewith.   In the event we fail to fulfill the terms of this agreement, said check is to be cashed and the proceeds retained by you as full liquidated damages."

The refunding bonds have been validated and the power of the respective parties to enter into the contract dated January, 1938, is admitted.  The January, 1938, contract provided for a fee of 1½%, or $21,210.00, for the said refunding agents, while the September 1st, 1938, contract provided for a fee of 3%, or $42,420.00, to be paid for their services. The contracts were each authorized by a resolution of the Board of Bond Trustees for the district.   The appellee con-

tends that the contract of January 14, 1938, was cancelled in order to make the new contract of September 1, 1938, and that the two were part and parcel of one single transaction and valuable rights accrued under the January contract to the appellants. See Hillsborough County v. Pal Mere, Inc., 101 Fla. 736, 135 So. 525. The appellants contend that the January contract was cancelled by the September contract and that additional features were made a part of the second contract not embraced in the first, and that the new contract was entered into because a portion of the bonds were to be recalled in June, 1938, when the same were not finally validated until August, 1938. The money to be used in the recall was to be supplied by the refunding agents and $20,-000.00 was placed in escrow as evidence of good faith of their intention to carry out each term of the September, 1938, agreement. Counsel construes the new contract as one to supply the money and purchase the outstanding bonds, while the old contract was one to exchange the new bonds for the old. The bill of complaint does *not* charge fraud, bad faith or improper contract on the part of the Board of Bond Trustees in passing the necessary resolutions and entering into the two contracts. It is alleged that certain secret meetings were held, but the allegation is insufficient to show fraud or bad faith.

It affirmatively appears on the record that a gross saving in the sum of $411,550.00 will accrue to the District if the September 1938, contract is carried out. It is not necessary to a decision of this case for us to pass upon the legal sufficiency of the January, 1938, contract or to decide that the same was cancelled or set aside by the new contract of September, 1938, which can be decided when brought to this Court, but the sole question presented on this record, in absence of allegations of fraud, bad faith or improper conduct on the part of the members of the Board of Bond

Trustees of the District, is whether or not they had the power under the law to pass the necessary resolution and enter into the contract dated September 1, 1938. We think the Board of Bond Trustees had the power and authority to enter into the contract for the purpose of perfecting an extension of time of payments of the bonds now before us whereby a savings of $411,550.00 can be obtained for the District by entering into the agreement for a refund thereof. See Chapter 10013, Laws of Florida, Special Acts of 1923, as amended by Chapters 10562 and 10952, Special Acts of 1925, Laws of Florida, and Chapter 15772, Laws of Florida, Acts of 1931. Courts are without power to make contracts for parties, or to rewrite, alter or change the same when made, but have and possess the power of interpretation according to established rules. It is not within our jurisdiction to pass upon the wisdom or folly of the contracts here but this right will be left to the parties and will be held void only when made in derogation of some well recognized principle of law. The increased fee in the sum of approximately $22,000.00 obligated to be paid to the refunding agents in the absence of a showing of fraud, bad faith or improper conduct must be sustained by this Court as being fully within the power conferred by law upon the Board of Bond Trustees. It is very probable that different members of this Court would hesitate to pay an additional sum of $20,000.00 for practically the same service provided for in the first contract, but these matters must address themselves to the sound judgment and conclusions of the different communities transacting the said business. The tax payer here is to be commended for his vigilance rather than be censured for seeking a decision of the Court upon the case at bar. He has manifested a keen interest in local government which he is called upon by taxation and good citizenship to support and maintain.

The general rule is that competent parties shall have the utmost liberty of contracting and their agreements voluntarily and fairly made will be upheld and sustained by the courts. All parties *sui juris* are free to make whatever contract they may choose so long as no fraud or deception is practiced and there is no infraction of law. The fact that one of the parties to a contract made a hard bargain will not alone avoid a contract. See Sommers v. Apalachicola Northern R. Co., 85 Fla. 9, 96 So. 151; Continental Cas. Co. v. Bows, 72 Fla. 17, 72 So. 278; Clay v. Girdner, 103 Fla. 135, 138 So. 490; Gabel v. Simmons, 100 Fla. 526, 129 So. 777; Newsom v. Acacia Mut. Life Ass'n., 102 Fla. 567, 136 So. 389; Pine Lbr. Co. v. Crystal River Lbr. Co., 65 Fla. 254, 61 So. 576; Mizell Live Stock Co. v. McCaskill Co., 59 Fla. 322, 51, So. 547; Frissell v. Nichols, 94 Fla. 403, 114 So. 431; Atlantic Coast Line R. Co. v. Beazley, 54 Fla. 311, 45 So. 761; Holmberg v. Hardee, 90 Fla. 787, 813, 108 So. 211; Eubanks v. Southern Ry. Co., 244 Fed. 891; Ireland v. Craggs, 56 Fed. (2d) 785, 787.

Counsel for appellee cite the case of Hillsborough County v. Pal Mere, Inc., *supra,* and contend that certain rights accruing under the old contract can not be disregarded or disposed of as contemplated by the terms of the new contract. We do not think or believe it necessary to pass upon this question in the disposition of the case at bar, but when the rights under the old contract are properly presented the Court can and will decide such issues. The question before the Court is the wisdom or policy on the part of the Board of Trustees to pay $42,420.00 fees for which they had previously agreed to pay $21,210.00, but this does not present a question of law.

The temporary injunction issued by the court below was improper and therefore the decree appealed from is hereby reversed.

WHITFIELD, P. J., and BROWN and CHAPMAN, J. J., concur.

TERRELL and BUFORD, J. J., concur in the opinion and judgment.

ELLIS, C. J., dissents.