711 So.2d 46 (1998)
FRANKLIN & MARBIN, P.A., Appellant,
v.
Kim Lasky MASCOLA, Appellee.
No. 97-0091.
District Court of Appeal of Florida, Fourth District.
March 18, 1998.
Order Clarifying Decision May 13, 1998.
*47 Catherine J. Maclvor and Barry S. Franklin of Franklin & Marbin, P.A., North Miami Beach, for appellant.
Steven H. Naturman of Naturman & Joblove, P.A., Miami, for appellee.
FARMER, Judge.
A discharged lawyer sued his former client for fees under their contract of representation and now appeals the trial court's award of a reasonable fee for the legal services rendered. This case raises important questions as to the rights and liabilities of an attorney and client under a fee contract. The issues involve the method for determining the client's fee responsibility directly to her own lawyer. We reverse.
The client retained the attorney to represent her in a pending paternity action after having discharged her previous counsel. Actually she initially approached the attorney to represent her in connection with a personal injury action against the family of the putative father, and in the course of their discussions retained him for both matters. Although she agreed to a standard contingency contract in the personal injury matter, she agreed to the following provision for fees in the paternity case:
"You agree to pay our firm ... a reasonable attorney's fee against which we will bill you in accordance with our established hourly rates fixed as follows: $275 per hour for BARRY S. FRANKLIN, $225 per hour for CINDY D. SACKRIN, and between $150$175 per hour for other attorneys of the firm. Paralegal and law clerk time will be billed at the rate of $75 per hour. You will be charged for all attorney time expended in connection with your file, including conferences, telephone calls, discovery, trial preparation, drafting documents, negotiations, research, court time and travel time."[1] [emphasis supplied]
In another provision, the client agreed:
"YOU AGREE TO CAREFULLY READ ALL BILLING STATEMENTS *48 AND PROMPTLY NOTIFY US, IN WRITING, OF ANY CLAIMED ERRORS OR DISCREPANCIES, WITHIN FIFTEEN (15) DAYS FROM DATE OF STATEMENT. IF WE DO NOT HEAR FROM YOU IN WRITING, IT IS PRESUMED THAT YOU AGREE WITH THE CORRECTNESS, ACCURACY AND FAIRNESS OF THE BILLING STATEMENT." [e.o.]
She stated no objection to the monthly statements rendered by the firm during the representation, explaining that she did not bother reading them.
After representing her for approximately nine months, the firm moved for leave to withdraw in the paternity action, citing irreconcilable differences. It also filed a notice of charging lien. At the time of the firm's withdrawal, there had been no conclusion to the paternity matter, no final award of support and expenses.
These fee proceedings began after the withdrawal of the attorney. The firm contended that she had frustrated its attempts to have the court award an interim attorney's fee from the putative father under the statute.[2] It filed a motion in the pending paternity action "for entry of final judgment" relating to its claim of lien and the amount of its fee. The motion stated that the firm had rendered statements to the client during its representation totaling $19,561 and claimed prejudgment interest at 12% per annum. The motion closed with a demand for a money judgment against the client for the fees billed.
The evidence offered by the law firm at the final hearing comprised the fee contract, the statements rendered by the firm on a monthly basis, the testimony of Barry Franklin as to the work his firm had performed and other related circumstances, and the testimony of an expert attorney as to the reasonableness of the hourly rates billed and the hours performed. While the client testified on her own behalf, she offered no rebuttal expert evidence as to the reasonability of the hourly rates or hours billed.
Without finding the fee excessive, the trial judge reduced the hourly rates to a reasonable amount, and then similarly reduced the hours billed to what the court determined was a reasonable number. The firm's unobjected, billed fee of $19,561 was reduced to $6,800. The court explained:
"The basic problem with this case appears to be that the parties are embroiled in animosity concerning issues that are unrelated to the paternity/child support case.... The [claimed] attorneys' fees in this case are out of proportion with the cause of action and the results that could possibly be obtained in the action."
It is this judgment that we review today.
On appeal, the firm's basic contention is that "a deal is a deal." First party disputes between an attorney and client over how much is due under the kind of fee contract presented here, the firm contends, are governed solely by the fee contract itself. In a judicial proceeding between the lawyer and the client, the amount due under the contract is not determined according to the factors used by courts in setting a reasonable fee to be paid by the opposing party under a prevailing party fee provision in a contract or statute. In other words, the firm argues, the kind of fee contract at issue here is not subject to later judicial analysis as to whether the hourly rate or numbers of hours are reasonable, as it would for a third party payor. If the services relate to the contract matter and if they were billed to the client who did not object to them then, according to the firm, the client owes the full amount of the bill.
When someone other than the client is required by an agreement or a statute to pay the other party's attorney's fees, Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla.1985), and Standard Guaranty Ins. Co. v. Quanstrom, 555 So.2d 828 (Fla.1990), require that the trial court award *49 only a reasonable fee. Under Rowe,[3] the trial court determines a reasonable fee from testimony by expert witness lawyers as to the prevailing rates for attorneys in comparable circumstances and as to the amount of time reasonably expended by the attorney for the party seeking payment. In contrast, this case deals with the client's obligation for fees directly to the client's own lawyer.
The cases dealing with client liability under a contract for fees appear to arise in three circumstances. First, the client may discharge the attorney before the attorney can fully perform the contract of representation calling for either a fixed or a contingent fee, and the lawyer then seeks to be paid. Second, the attorney may fully perform the contract of representation after which the lawyer seeks the agreed compensation. Third, the lawyer may withdraw without fault of the client before full performance and later demand payment. In this case, the lawyer contends that the client interfered with the attorney's attempts to compel payment of fees under the paternity statute, and thus the attorney was forced to withdraw. At bottom the firm here claims that it was effectively discharged by the client.
Formerly the supreme court had held in Goodkind v. Wolkowsky, 132 Fla. 63, 180 So. 538, 542 (1938), that:
"the discharge of an attorney, without cause, employed for a specified purpose and for a definite fee, after there has been substantial performance on the part of the attorney, is a breach of the contract for which an action for damages will lie against the client for the fee agreed upon." [emphasis supplied]
In Rosenberg v. Levin, 409 So.2d 1016 (Fla. 1982), however, the court receded from Goodkind and adopted a rule that:
"an attorney employed under a valid contract who is discharged without cause before the contingency has occurred or before the client's matters have concluded can recover only the reasonable value of his services rendered prior to discharge, limited by the maximum contract fee."
409 So.2d at 1021. In announcing this rule, the court explicitly stated that it applied to fixed fee and contingency fee contracts:
"It is our opinion that it is in the best interest of clients and the legal profession as a whole that we adopt the modified quantum meruit rule which limits recovery to the maximum amount of the contract fee in all premature discharge cases involving both fixed and contingency employment contracts." [emphasis supplied]
409 So.2d at 1021.[4]
In the third circumstancewhere the attorney withdraws from further representation without fault by the client and before full performancethis court confronted the client's fee obligation in Searcy Denney Scarola Barnhart & Shipley, P.A. v. Scheller, 629 So.2d 947 (Fla. 4th DCA 1993). We there held that the client may be obligated for quantum meruit not to exceed the contract fee, the amount of which could be reduced by any damages caused by the lawyer's refusal to perform, and even ultimately by an entire forfeiture of the fee. The present case does not involve the circumstance we faced in Scheller.
Thus, to sum up the three circumstances confronted by these cases and the fee *50 obligations of the client, they are as follows: (1) where under a fixed fee or contingency contract the client discharges the lawyer who is without fault before full performance of the contract, under Rosenberg the client is obligated only for quantum meruit not to exceed the contract fee; (2) where the lawyer has fully performed a contingency fee contract and the client has been awarded a recovery, under Kelner the client may be held to the full contract fee; and (3) where the lawyer withdraws before a result, but without fault by the client, under Scheller the client may be liable for quantum meruit, less any damages the attorney has caused the client to suffer from the lawyer's refusal to perform, and subject also to a possible forfeiture of the fee.
We note that in applying Rosenberg the measurement of quantum meruit proved quite contentious. Some courts held that the Rowe method should be used to determine quantum meruit for discharged lawyers. Rood v. McMakin, 538 So.2d 125 (Fla. 2d DCA 1989); Riesgo v. Weinstein, 523 So.2d 752 (Fla. 2d DCA 1988); Barton v. McGovern, 504 So.2d 457 (Fla. 1st DCA 1987) (in fixing quantum meruit recovery to be awarded attorney discharged without cause before conclusion of case court must use Rowe criteria); Boyette v. Martha White Foods, Inc., 528 So.2d 539 (Fla. 1st DCA), review denied, 538 So.2d 1255 (Fla.1988) (Rowe method, without contingency risk multiplier, should be applied to determine discharged attorney's quantum meruit recovery).
Other courts, including this one, held that the Rowe formula is inapplicable to a lawyer's claims for fees directly from the client. Faro v. Romani, 629 So.2d 872 (Fla. 4th DCA 1993); Stabinski, Funt & De Oliveira, P.A. v. Law Offices of Frank H. Alvarez, 490 So.2d 159 (Fla. 3d DCA 1986). As Judge Schwartz cogently explained in Stabinski:
"The requirement that the `trial judge' or `trial court ... set forth specific findings,' Rowe, 472 So.2d at 1151, refers to the contents of an order necessarily rendered after a non-jury proceeding, such as the allotment of fees from a common fund or under a particular `fee shifting' statute. But first party disputes between attorney and client and under indemnity agreements are ordinary damage actions at law which are subject to trial by jury. Machado v. Foreign Trade, Inc., 478 So.2d 405 (Fla. 3d DCA 1985); Barranco, Darlson, Daniel & Bluestein, P.A. v. Winner, 386 So.2d 1277 (Fla. 3d DCA 1980); Sork v. United Benefit Fire Insurance Co., 161 So.2d 54 (Fla. 3d DCA 1964). By definition, a jury is incapable of rendering a `verdict' in the form prescribed by Rowe, and there is surely no indication that the supreme court intended to impose such a requirement. The fact that the component of Rowe now before us simply cannot, in so many instances, be applied to these kinds of attorney's fee controversies confirms what we have already concluded, that the lodestar method as a whole does not extend to them." [emphasis supplied]
490 So.2d at 161. It is this rationale from Stabinski that the firm seeks to have applied in this appeal.
There is still another supreme court decision which, though not involving a direct first party dispute between attorney and client, is instructive as to the fee issue we confront today. In Lugassy v. Independent Fire Ins. Co., 636 So.2d 1332 (Fla.1994), the fee dispute was really between the insured and their insurer, but the determination of the amount of the fee was based directly on the text of the fee agreement. Originally the lawyer and client had agreed that the fee would be a percentage of any recovery from the insurer, but during trial they modified their agreement to make the fee equal to the amount awarded against the insurer under the statute allowing for fees when an insured is required to sue his insurer.[5]
On review in the supreme court the issue was whether the lawyer and client could modify their original agreement and whether the modification was enforceable. The court adopted a rule that the lawyer and client could modify the original contract during the litigation, so long as the modification was done before any verdict and was supported *51 by consideration. Further explaining, the court said:

"The general freedom of parties to form a contract also supports this rule. `Competent persons have the utmost liberty of contracting and when these agreements are shown to be voluntarily and freely made and entered into, then the courts usually will uphold and enforce them.' Wechsler v. Novak, 157 Fla. 703, 708, 26 So.2d 884, 887 (1946). This general proposition applies to attorneys and clients entering into a fee agreement because `[a]s between a lawyer and his client the matter of the fee is one of contract between the two....' Lyle v. Lyle, 167 So.2d 256, 257 (Fla. 2d DCA), cert. denied, 172 So.2d 601 (Fla.1964), receded from on other grounds by Lafferty v. Lafferty, 413 So.2d 170 (Fla. 2d DCA 1982)." [emphasis supplied]
636 So.2d at 1335. Lugassy thus inferentially supports the Stabinski rule of enforcing agreements between lawyer and clientat least, as to fees already due and payable for services fully performedin common law actions according to their terms.[6]
As we saw at the beginning, the fee contract at issue in this case is neither fixed nor contingent. Instead, it is a periodic fee based on agreed hourly rates for hours billed from time to time, as to which the client had a contractual right and duty to object within a specified period of time after each billing. The firm's position on appealthat the client is bound by this contract and the court has no authority to rewrite the contract to set a different feeis based on Lugassy and Pierce v. Isaac, 134 Fla. 666, 184 So. 509 (1938). Of course, the supreme court has also long held that attorney's fee contracts are infused with the public interest and that attorneys are not free to negotiate just any fee. In Baruch v. Giblin, 122 Fla. 59, 164 So. 831 (1935), the court said:
"Lawyers are officers of the court. The court is an instrument of society for the administration of justice. Justice should be administered economically, efficiently, and expeditiously. The attorney's fee is, therefore, a very important factor in the administration of justice, and if it is not determined with proper relation to that fact it results in a species of social malpractice that undermines the confidence of the public in the bench and bar. It does more than that; it brings the court into disrepute and destroys its power to perform adequately the function of its creation."
164 So. at 833. To meet this public interest, the supreme court has adopted specific rules regulating attorney's fees.[7],[8] The issue of enforceability of lawyer fee contracts is set out in a specific rule that states:
"Contracts or agreements for attorney's fees between an attorney and client will ordinarily be enforceable according to the terms of such contracts or agreements, unless found to be illegal, obtained through advertising or solicitation not in compliance with the Rules Regulating The Florida Bar, prohibited by this rule, or clearly excessive as defined by this rule."[9]
There is no evidence that the present agreement was obtained through noncomplying advertising or solicitation. Moreover, the trial court did not find that the contractually agreed fee, or that the actual rates and hours *52 billed, is illegal or clearly excessive. The firm argues that the Florida Bar disciplinary rules cannotand, indeed, do notsupplant this kind of fee agreement with a client and may not be used to "reform an otherwise valid retainer agreement between an attorney and a client."
In addition to requiring periodic payments for services as they are performed, the agreement specifies that objections to the hours and rates billed must be made in writing within a fixed time after each billing statement is rendered. This provision serves important interests for both the client and the lawyer. From one perspective, it allows the client to control the total, ultimate fee by overseeing the amount of time spent by the lawyer. If the amount of time spent on the matter should prove to be more than the client anticipates or is able to compensate, then the client has the means at hand to end the expenditure of further time before the amount due rises beyond the client's means.
From the other perspective it serves the equally important interest of requiring reasonably contemporaneous objections to the lawyer's billings. In insures that the lawyer is not later faced with after-the-fact objections to the expenditure of time that might have been avoided if seasonably raised. Allowing the client to raise objections for the first time after the services have been rendered, and suit has been instituted to recover the fees due, would eliminate an essential purpose of a contractual provision designed for mutual benefit. Hence, in the circumstances presented here, the client's failure to object seasonably to the hours as they were billed would waive any objection to the number of hours billed and would operate as a tacit admission of the reasonability thereof in a later suit for a money judgment under the contract.
We therefore conclude that the contract rule of Stabinski, Lugassy and Pierce, as well as rule 4-1.5(d), governs the rights and liabilities of the parties to this fee agreement. In the absence of a legal determination by the court that the fee contract is illegal, prohibited or excessive, under a periodic fee agreement for services already performed the lawyer is entitled to a money judgment for the amount of fees due under the contract. That is an ordinary action at law and, as Judge Schwartz pointed out in Stabinski, the parties are entitled to trial by jury. 490 So.2d at 161. The firm's contention in that action at law would be that the client failed to object to billing statements as they were rendered and is now liable for the amount of the statements.[10]
This brings us to the client's principal contention on this appeal. She repeatedly objected to the judge below making any determination of the amount of the fees due. She correctly pointed out that no charging lien could be enforced in this case because there was nothing recovered to which the lien could attach. And, in fact, the trial court found that there had been no recovery of any monetary relief in the paternity action and that the lien was therefore a nullity. See Glickman v. Scherer, 566 So.2d 574 (Fla. 4th DCA 1990); Litman v. Fine Jacobson Schwartz Nash Block & England P.A., 517 So.2d 88 (Fla. 3d DCA 1987). Nevertheless, the trial court proceeded to rule that it had the discretion to determine the amount of fees due, citing our decision in Kozich v. Kozich, 501 So.2d 1386 (Fla. 4th DCA 1987).
In Kozich we reversed a trial judge for refusing to determine the amount of a fee underlying a charging lien. A husband and wife settled their dissolution of marriage action. Under the settlement, the husband paid his wife $93,000 for her attorney's fees and costs. Her lawyer sought both a charging *53 lien against his client's own recovery and a judgment against the husband's lawyer under a provision in the settlement agreement in which the husband agreed to pay part of her fees. The trial court denied both the lien and any determination as to the amount of fees still owed by the wife. The trial court said that its decision was without prejudice to the lawyer suing the client in an action at law. In reversing, we said:
"There is no authority for either of these rulings by the trial court and both contravene important policy considerations. By refusing to determine the amount of a reasonable fee in the dissolution proceedings and providing that the attorney may proceed `by suit at law for the balance of attorneys fees due and owing,' the trial court has created the necessity for another lawsuit. Avoiding multiplicity of suits is a policy underlying a number of legal devices including the recognition of class actions. Refusal to enforce an attorney's charging lien for the full amount of an earned fee contravenes the policy underlying this equitable remedy, early expressed by our supreme court and quoted with approval in Sinclair [Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A. v. Baucom, 428 So.2d 1383 (Fla.1983) ]:
`While our courts hold the members of the bar to strict accountability and fidelity to their clients, they should afford them protection and every facility in securing them their remuneration for their services. An attorney has a right to be remunerated out of the results of his industry, and his lien on these fruits is founded in equity and justice.'"
501 So.2d at 1387-1388.
In Shawzin v. Donald J. Sasser P.A., 658 So.2d 1148 (Fla. 4th DCA 1995), the client appealed a money judgment against him after a summary determination during proceedings to enforce a charging lien. Although we affirmed the imposition of the charging lien we reversed the money judgment for the fees due, explaining:
"We find merit, however, in appellant's argument that the trial court erred when it entered a money judgment in favor of appellee. Appellee concedes that Lochner v. Monaco, Cardillo & Keith, P.A., 551 So.2d 581 (Fla. 2d DCA 1989), is dispositive of this issue. In Lochner, the court held:
[T]he trial court erred in entering a money judgment against the appellant without notice. The appellant had notice only that Monaco was requesting a charging lien against the real property, and did not have notice that a money judgment might be entered.... Where an issue is not presented by the pleadings, nor litigated by the parties, a judgment entered on that issue cannot stand.

Id. at 583. As appellee noticed a hearing only on his motion for a charging lien, the notice failed to apprise appellant that a money judgment might be entered against him." [c.o.]
658 So.2d at 1150; see also Edward C. Tietig, P.A. v. Southeast Regional Const. Corp., 617 So.2d 761 (Fla. 4th DCA 1993).
One difference between Kozich /Shawzin and the present case is immediately apparent: the liens in Kozich and Shawzin were valid and enforceable against identifiable property recovered in the litigation. In the present case, however, there was no recovery of money or property to which a lien might attach. This distinction is dispositive.
The judicial interest in avoiding multiple proceedings yields, of course, to paramount rights like the constitutional right to trial by jury. The holdings of this court are therefore properly understood to permit a summary determination by the judge of the amount of fees due only for the purpose of enforcing a charging lien against identifiable property recovered as a result of the lawyer's labors. When there is no lien, there is no basis for the trial judge to usurp the parties' right to an independent action on the contract.
The firm argues that the client waived any objection to the judge determining the amount of the fee. The record does show that the client had 10 days notice before the final hearing on the motion to enforce charging lien that the firm would also seek a money judgment. But that notice does not end the matter. The record also shows that the client repeatedly objected to *54 the court trying the amount due. We are thus forced to conclude that this issue was not tried with the consent of the parties. Clearly, the firm may have a claim for a money judgment on its contract, but the client is also entitled to defend against the claim for a money judgment in an ordinary action at law in which the client can demand a jury trial. It was error to proceed to determine the amount of the fees over the objection of the client.
REVERSED.
WARNER and KLEIN, JJ., concur.

ON MOTION FOR CLARIFICATION
FARMER, Judge.
In its motion for clarification, the firm calls our attention to the fact that, in the fee contract, the client waived her right to trial by jury in any litigation to collect fees owed. Arguing that our opinion appears to represent a specific ruling that the client is entitled to a jury trial in any ensuing suit for fees, the firm seeks a clarification stating that she has waived the jury.
In granting the firm's motion, we deem it premature to go as far as the firm contends. It is sufficient for us to state that our references in the opinion to the right to trial by jury were abstract, general, and did not represent an actual holding by us that she is necessarily so entitled in any suit by the firm. We leave to the trial judge in the suit for damages under the fee contract the specific question of whether in this instance she has waived her right to a jury.
WARNER and KLEIN, JJ., concur.
NOTES
[1] The contract also contained a provision for "an additional and final fee" at the conclusion of the matter, the amount of which would be set by the firm "taking into consideration the results achieved, the complexity of the matter and the other permissible criteria recognized by the Rules Regulating the Florida Bar."
[2] See § 742.045, Fla. Stat. (1995).
[3] All references to Rowe should be understood to include Quanstrom also, unless otherwise indicated.
[4] Although in Rosenberg the court expressly receded from Goodkind, it left intact its decision in Milton Kelner, P.A. v. 610 Lincoln Road, Inc., 328 So.2d 193, 196 (Fla.1976) [Kelner]. Kelner involved the second circumstance outlined above, where the attorney has fully performed the contract of representation and the client has breached the agreement to pay the contract fee. The fee in that case was a contingency fee that had ripened into a liquidated sum because of the occurrence of the contingency. The client had rejected the recovery, however, in order to gain more than provided in the contract. When the lawyer sued the client, the jury awarded the full contract fee. In approving the jury award of the full amount of the fee fixed by the fully performed contract, the court left open the possibility that quantum meruit may be the remedy where a discharge occurs before the lawyer fully performs the contract. 328 So.2d at 196. It was only in Rosenberg that the court later confronted a discharge prior to the contingency and adopted the quantum meruit rule for all cases involving a discharge before full performance by the lawyer.
[5] See § 627.428, Fla. Stat. (1995).
[6] To be sure, the Lugassy agreement allowed the court to set the amount of the fee, while the agreement we confront today fixes the hourly rates and the number of hours to which no objection has been timely lodged.
[7] See R. Regulating Fla. Bar. 4-1.5. Subdivision (a) expressly forbids illegal, prohibited or clearly excessive fees. Subdivisions (b) and (c) set forth several factors for ascertaining reasonable fees. In Rowe and Searcy, Denney, Scarola, Barnhart & Shipley P.A. v. Poletz, 652 So.2d 366 (Fla.1995), the court has held that these factors are directly applicable in deciding the question of reasonable fees when someone other than the client is to pay them. The subject of contingency fees is addressed in subdivision (f), which specifies limits for contingency fees.
[8] In Chandris, S.A. v. Yanakakis, 668 So.2d 180 (Fla.1995), the court held that fee contracts that do not comply with the lawyer disciplinary rules are subject to being held void as against public policy. See also American Casualty Co. v. Coastal Caisson Drill Co., 542 So.2d 957, 958 (Fla.1989); City of Miami v. Benson, 63 So.2d 916 (Fla. 1953); City of Leesburg v. Ware, 113 Fla. 760, 767, 153 So. 87, 90 (1934).
[9] See R. Regulating Fla. Bar 4-1.5(d).
[10] We hasten to observe that the "ordinary action at law" prosecuted by a firm against a client for fees of the kind involved in this case may be founded on slightly different causes of action. On the one hand, the firm may simply allege a breach of contract and claim damages based on unpaid billing statements. Or, the firm may instead allege some or all of the common counts an account stated, open account, or services renderedand claim the same measure of damages. No matter what cause of action is alleged, however, a client would theoretically be entitled to defend on the basis that the resulting fee is illegal, prohibited or clearly excessive within the meaning of the disciplinary rules. While either party may demand a trial by jury on any of these different causes of action, they will certainly be entitled to have the trial court consider whether claims or defenses are subject to summary judgment based on crystallized facts.